UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNNANN MARIE STEFFEL,

     Plaintiff,

v.                                                                                     Case No. 1:20-cv-53

                                                                                   Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant,
_____/

**OPINION**

Plaintiff Lynnann Marie Steffel[1] brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff filed an application for DIB and SSI on June 6, 2016, alleging a disability onset date of November 6, 2015. PageID.37. Plaintiff identified her disabling conditions as dissociative identity disorder, chronic post-traumatic stress disorder (PTSD), personality disorder (clusters B and A), and somatic symptom disorder. PageID.223.  Prior to applying for DIB and SSI, plaintiff completed college and had past employment as a consultant, a waitress, a fast food worker, and a retail sales clerk.  PageID.47, 224.  The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 11, 2018.  PageID.37-49.  This decision,

---

[1] Plaintiff was formerly known as Cynthia Ann Craton.  This is the name which appears on the Administrative Law Judge's decision.  PageID.37.

1

which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 6, 2015, and that she met the insured status of the Social Security Act through December 31, 2015. PageID.39. At the second step, the ALJ found that plaintiff had severe impairments of PTSD, personality disorder with multiple elements, and dissociative disorder. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.40.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: only simple, routine tasks; only frequent interaction with supervisors, occasional interaction with coworkers, and no interaction with the public; no fast-paced or production rate work; and only occasional changes in the workplace setting.

PageID.42. The ALJ also found that plaintiff could not perform any of her past relevant work. PageID.47.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national economy. PageID.47-48. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled work in the national economy such as linen room attendant (medium work, 65,000 jobs), laundry worker I (medium work, 90,000 jobs), and cleaner (medium work, 664,000 jobs). PageID.48. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November

4

6, 2015 (the alleged onset date) through December 11, 2018 (the date of the decision). PageID.48-49.

### III. DISCUSSION

Plaintiff has raised two errors on appeal.

**A. The ALJ committed reversible error by not properly considering the opinions of plaintiff's treating physicians.**

Plaintiff refers to the opinions of three treating physicians, Hassan S. Almaat, M.D., Karen DeYoung, D.O, and Steven Reppuhn, Ph.D.[2]  Because plaintiff filed her applications in 2016, the treating physician rule applies to the ALJ's evaluation of the medical evidence.[3]  Under this rule, a treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2).  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

---

[2] While plaintiff includes Dr. Reppuhn in his argument regarding treating physicians (*see* Plaintiff's Brief (ECF No. 18, PageID.581-582), the Court notes that Reppuhn did not treat plaintiff.

[3] Because plaintiff filed his claim before March 27, 2017, the "treating physician rule" applies to the ALJ's decision. *See* 20 C.F.R. § 404.1527.

        **1.**     **Dr. Almaat**

The ALJ addressed Dr. Almaat's opinion as follows:

> As for the opinion evidence, Dr. Almaat provided responses to an Assessment of Mental Residual Functional Capacity form in November 2017. He indicated that the due to the Claimant's PTSD and major depressive disorder, she has mild limitation in the ability to understand, remember, or apply information; moderate limitation in the ability to interact with others; moderate limitation in the ability to concentrate, persist, or maintain pace; and mild limitation in the ability to adapt or manage oneself Dr. Almaat further indicated that the claimant achieved only marginal adjustment, meaning she has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life. (Ex. 13F.) I accord some weight to Dr. Almaat's conclusions. He is a treating physician who saw the claimant several times and, therefore, has a longitudinal perspective regarding her condition, although he does not appear to have any specialization in psychiatry. I agree with his conclusions regarding moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. However, his conclusions are internally inconsistent, as he indicated the claimant has only mild limitation in the ability to adapt or manage oneself, but she has minimum capacity to adapt to changes in her environment. Furthermore, Dr. Almaat provided no specific functional limitations in terms of the claimant's residual functional capacity. As such, his conclusions warrant only some weight.

PageID.44-45.

The ALJ pointed out internal inconsistencies in Dr. Almaat's opinion. The ALJ gave good reasons for assigning the doctor's opinion only some weight. Accordingly, plaintiff's claim of error will be denied.[4]

        **2.**     **Dr. DeYoung**

The ALJ addressed Dr. DeYoung's opinion as follows:

> The claimant's treating physician Karen De Young, DO, completed a student loan Discharge Application for Total and Permanent Disability Form, in which she indicated that the claimant has PTSD and checked a box indicating that the claimant's disabling conditions of PTSD other mental disorders cause social/behavioral limitations. She checked a box indicating that these impairments

---

[4] Plaintiff suggests that the ALJ erred because the ALJ "decided to base his decision upon the report of a non-examining psychologist who reviewed this case and who never saw the reports of Dr. Almaat, the treating psychiatrist in this case." Plaintiff's Brief (ECF No. 18, PageID.581). Plaintiff fails to develop this argument. *See, McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

>prevent her from engaging in any substantial gainful activity, in any field of work, and they are expected to last not less than 60 months. (Ex. 11F/44.) Dr. De Young's opinion that the claimant is disabled is an opinion on an issue reserved for the Commissioner, and, therefore, is entitled to no special weight on the ultimate issue of disability. I accord no weight to the checkbox form because it provides no specific functional limitations, and it is not consistent with the medical evidence of record. Mental status exams showed some fair insight and judgment. However, they consistently showed that the claimant was alert, fully oriented, and calm with good mood, coherent affect, intact memory, coherent thought processes, unremarkable thought content, normal speech, and intact cognition. (Exs. 14F/2-3, 4, 6, 8, 11; 15F/2, 3, 8, 11.)

PageID.45.

Plaintiff contends that the ALJ's decision is flawed because "while he condemned a 'check-box' form which had been completed by Dr. DeYoung, who was Plaintiff's primary care physician at the time, he had no such objections to a similar fill-in-the-blank form used by the non-examining psychologist (PageID.87-99)."  Plaintiff's Brief at PageID.581.

ALJs are not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]", *Ellars v. Commissioner of Social Security*, 647 Fed. Appx 563, 566 (6th Cir. 2016) (internal quotation marks omitted).

Here, the form consisted of a single statement asking whether the patient was disabled, *i.e.*, "Does the applicant have a medically determinable physical or mental impairment that (a) prevents the applicant from engaging in any substantial gainful activity, in any field of work and (b) can be expected to result in death, or has lasted for a continuous period of not less than 60 months, or can be expected to last for a continuous period of not less than 60 months?"

7

PageID.488. Dr. DeYoung checked the box "yes". *Id*. The doctor gave a diagnosis of PTSD.[5] *Id*. The doctor identified social/behavioral limitations as "does poorly with social interactions."[6] *Id*.

As an initial matter, the determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). *See* 20 C.F.R. § 404.1527(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986).

Next, plaintiff suggests that the Commissioner employed a double standard, by accepting a check-box opinion from a government psychologist but rejecting a check-box opinion submitted by plaintiff's medical provider. Plaintiff's Brief (ECF No. 18, PageID.581-582). In support of this claim, plaintiff refers to the form filled out by the non-examining psychologist (PageID.87-99). Plaintiff is comparing apples to oranges. As discussed, *supra*, Dr. DeYoung marked "yes" on a form which asked if the plaintiff had a medically determinable physical or mental impairment that prevents her from engaging in any substantial gainful activity. In contrast, the form completed by the non-examining psychologist required a number of narrative responses including: findings of facts and analysis of evidence; medical evaluation; medically determinable impairments and severity; assessment of policy issues; residual functional capacity; assessment of vocational factors; and a personalized disability explanation. PageID.91-99.

---

[5] The Court notes that portions of this poorly reproduced form are illegible.

[6] There are a few other words which are illegible.

8

The ALJ gave good reasons for assigning no weight to Dr. DeYoung's check-box opinion. Accordingly, plaintiff's claim of error will be denied.

### 3. Dr. Reppuhn

While plaintiff's treating physician argument refers to Dr. Reppuhn, this doctor was a consulting psychologist. PageID.43. The ALJ addressed the doctor's opinion as follows:

> Dr. Reppuhn indicated that the claimant's level of psychopathology and personality dysfunction would adversely impact her capacity to work. (Ex. 5F/8.) I accord no weight to Dr. Reppuhn's opinion. Although he is familiar with the agency's rules and regulations, and he interviewed and examined the claimant, his opinion provides no specific functional limitations.

PageID.45.

While the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted). Here, the Court can trace the ALJ's reasons for according no weight to the doctor's opinion, *i.e.*, it did not include any functional limitations. PageID.341-355. Accordingly, plaintiff's claim of error will be denied.

### B. The ALJ did not have substantial evidence to support his credibility finding for plaintiff.

Plaintiff contests an observation made by the ALJ at the administrative hearing.[7] According to plaintiff, the ALJ found that "Plaintiff 'seemed fine to him.'" Plaintiff's Brief at

---

[7] While plaintiff refers to a credibility assessment, the Court notes that the SSA has eliminated the term "credibility" from its policy. *See* SSR 16-3p, 2016 WL 1119029 at *1 (March 16, 2016) ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that

9

PageID.585. Plaintiff does not identify the location of that statement in the record. In a portion of the decision comparing plaintiff's alleged impairments with the medical evidence of record, the ALJ made the observation, "I note that the claimant was quite pleasant at the hearing, she smiled occasionally, she had good memory for her history, and she was able to function in the stressful situation of a hearing with no evidence of decompensating or struggling emotionally." PageID.46. Such observations are not error. *See* SSR 16-3p, 2017 WL 5180304 at *7 (Oct. 25, 2017) ("The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."); *Blankenship v. Commissioner of Social Security*, 624 Fed. Appx. 419, 430 (6th Cir. 2015) (treating doctor's assertion that claimant was unable to walk from the parking lot to work was "seemingly contradicted by the fact that Blankenship was able to walk unassisted from her car to the room where the hearing was being held."). Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: March 15, 2021   /s/ Ray Kent
RAY KENT
United States Magistrate Judge

---

subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.").